UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSEANNE SCULLY<br>145 HUNT VALLEY CIRCLE<br>BERWYN, PA 19312<br><br>and<br><br>CHARLES M. CAVANAGH<br>145 HUNT VALLEY CIRCLE<br>BERWYN, PA 19312<br>　　　　Plaintiff(s)<br>　　v.<br><br>ELECTROLUX HOME PRODUCTS<br>d/b/a FRIGIDAIRE<br>250 BOBBY JONES EXPRESSWAY<br>MARTINEZ, GA 30907<br><br>and<br><br>SEARS ROEBUCK AND CO.<br>3333 BEVERLY RD.<br>HOFFMAN ESTATES, IL 60179<br>　　　　Defendant(s) | Civil Action No.:<br><br>COMPLAINT |

Plaintiffs, Roseanne Scully and Charles M. Cavanaugh, by and through undersigned counsel, hereby demand judgment against defendants, and complain against them as follows:

PARTIES

1. The above-captioned Roseanne Scully and Charles M. Cavanaugh (hereinafter "plaintiffs") were, at all times relevant hereto, Pennsylvania citizens who were owners and occupants of the residential property located at the above-referenced address.

2. At all times relevant hereto, Defendant Sears, Roebuck and Co. (hereinafter "Sears") was, upon belief and information, a New York corporation with its primary place of business at the above-captioned address, that was authorized to do business within the Commonwealth of Pennsylvania. Upon information and belief, Sears is in the business of, *inter*

*alia*, selling, distributing, marketing, assembling and/or delivering domestic appliances such as, *inter alia*, the Kenmore-brand dehumidifier that was designed, assembled, manufactured, sold, distributed and/or marketed by Defendant Electrolux Home Products (which is the product at issue in this case and which was purchased by plaintiffs at Sears).

3. At all times relevant hereto, Defendant Electrolux Home Products d/b/a Frigidaire (hereinafter "Electrolux") was, upon information and belief, a Georgia corporation with its primary place of business at the above-captioned address, and was authorized to do business within the Commonwealth of Pennsylvania. Upon information and belief, Electrolux is in the business of, *inter alia*, designing, assembling, manufacturing, selling, distributing and/or marketing appliances such as, *inter alia*, the above-mentioned dehumidifier.

## JURISDICTION AND VENUE

4. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

5. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

6. Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

7. On May 12, 2010, a fire occurred at the plaintiffs' property, causing extensive damage to their real and personal property, as well as the imposition of additional expenses and hardship besides; this fire was directly and proximately caused by a malfunction of the above-mentioned dehumidifier as is further and more fully described below.

## COUNT I – NEGLIGENCE – SEARS

8. Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

9. Sears owes a duty of reasonable care to plaintiffs, and plaintiffs relied upon Sears, in regard to the sale, distribution, marketing, inspection, and installation, *inter alia*, of their products, including the above-referenced humidifier.

10. The aforementioned damages were the direct and proximate result of the negligence, carelessness, and/or other unlawful conduct of Sears, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

    a. failing to exercise reasonable care in the following manner:

        i. failing to market, sell, assemble, deliver and distribute a properly functioning dehumidifier;

        ii. failing to properly inspect, manufacture, distribute and/or test the dehumidifier;

        iii. failing to properly determine that the dehumidifier was not in compliance with applicable standards and/or

        iv. marketing, distributing, delivering, assembling and/or selling the dehumidifier when Sears knew or should have known that the dehumidifier would be unsafe for the reasons for which it was purchased.

    b. failing to adequately instruct and supervise its employees (etc., as above) so as to avoid the problems set forth in subparagraph (a) above;

    c. failing to adequately warn plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in subparagraph (a) above;

    d. failing to provide, establish, and/or follow proper and adequate controls so as to avoid the problems enumerated in subparagraph (a) above;

    e.    failing to perform the services set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards;

    f.    violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action; and/or

    g.    otherwise acting negligently under the circumstances.

11.    As a direct and proximate result of Sears's aforementioned actions, and/or omissions, Sears is liable to plaintiffs for their damages.

**WHEREFORE**, plaintiffs respectfully request judgment against Sears – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000 plus costs incident to this suit, delay damages and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT II – BREACH OF WARRANTIES – SEARS

12.    Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

13.    In conjunction with the sale, distribution, marketing, assembly, inspection, and installation of the dehumidifier, Sears expressly and/or impliedly warranted that the dehumidifier would be free from defects and safe to use for its intended purpose. Plaintiffs, to their detriment, relied upon the warranties put forth by Sears.

14.    Based upon the aforementioned careless and negligent conduct on the part of Sears as set forth in Count I, Sears has breached these warranties.

15. Furthermore, based upon the fact that that the dehumidifier was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Sears breached the aforementioned warranties.

16. Plaintiffs had and have performed all conditions precedent to recover based upon such breaches.

17. Plaintiffs' damages, as described above, occurred as a direct and proximate result of, *inter alia*, Sears' breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A.§2-315 and §2-314(c), and as a result of Sears's breach of its expressed and implied warranties in violation of 13 Pa.C.S.A. §2-313, as well as the express and implied warranties set out in the warranties that plaintiffs purchased at the time of buying the dehumidifier, and/or any time prior or subsequent thereto.

**WHEREFORE**, plaintiffs respectfully request judgment against Sears – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000, plus costs incident to this suit, delay damages and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – STRICT LIABILITY – SEARS

18. Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

19. Sears is engaged, and at all times relevant hereto was engaged, in the business of marketing, selling, assembling, delivering and distributing, *inter alia*, dehumidifiers, and, specifically, assembled, marketed and sold to plaintiffs the Kenmore-brand dehumidifier at issue in this case (described above).

20. Sears distributed, assembled, marketed, assembled, delivered and/or sold the dehumidifier in a defective condition, unreasonably dangerous to plaintiffs and their property.

21. Sears knew or should have known that the dehumidifier would, and did, reach the plaintiffs without substantial change in the condition in which originally selected and sold.

22. The aforementioned defects consisted of:

    (a) design defects;
    (b) manufacturing defects;
    (c) component defects;
    (d) use-instruction and/or warnings defects; and/or
    (e) a failure to warn of the design, manufacturing, and/or component defects, and/or properly provide warning and/or safe use instructions.

23. For these reasons, Sears is strictly liable to plaintiffs under Section 402A of the Restatement (2d) of Torts, the Restatement (3d) of Torts, and the applicable caselaw of the Commonwealth of Pennsylvania.

24. As a direct and proximate result of the aforementioned defects, plaintiffs sustained and incurred damage to their real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $150,000.

**WHEREFORE**, plaintiff respectfully requests against Sears – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000, plus interest, costs of suit, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT IV – NEGLIGENCE – ELECTROLUX

25. Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

26. Electrolux owed a duty of reasonable care to plaintiffs in regard to the manufacture, assembly, design, inspection, marketing, and distribution, *inter alia*, of the dehumidifier to the plaintiffs.

27. The aforementioned damages were the direct and proximate result of the negligence, carelessness, and/or other unlawful conduct of Electrolux, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

    a. failing to exercise reasonable care in the following manner:

        i. failing to manufacture, assemble, sell, design, distribute and/or market a properly functioning dehumidifier;

        ii. failing to properly inspect, manufacture, distribute and/or test the dehumidifier;

        iii. failing to properly determine that the dehumidifier was not in compliance with applicable standards and/or

        iv. manufacturing, marketing, distributing and/or selling the dehumidifier when Electrolux knew or should have known that the dehumidifier would be inadequate for the reasons for which it was purchased.

    b. failing to adequately instruct and supervise its employees (etc., as above) so as to avoid the problems set forth in subparagraph (a) above;

    c. failing to adequately warn plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in subparagraph (a) above;

    d. failing to provide, establish, and/or follow proper and adequate control so as to avoid the problems enumerated in subparagraph (a) above;

    e. failing to perform the services set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards;

    f. violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action; and/or

      g.      otherwise acting negligently under the circumstances.

28.      As a direct and proximate result of defendant's aforementioned actions, and/or omissions, Electrolux acted negligently or otherwise unlawfully, and is therefore liable to the plaintiffs for the damages suffered by plaintiffs.

**WHEREFORE**, plaintiffs respectfully request judgment against Electrolux – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000, plus costs incident to this suit, delay damages and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT V – BREACH OF WARRANTIES – ELECTROLUX

29.      Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

30.      In conjunction with the design and manufacture of the dehumidifier, Electrolux expressly and impliedly warranted that the dehumidifier would be free from defects and safe to use for its intended purpose. Plaintiff relied upon the warranties put forth by Electrolux, to their detriment.

31.      Based upon the aforementioned careless and negligent conduct on the part of Electrolux as set forth in Count IV, Electrolux breached these warranties.

32.      Furthermore, based upon the fact that that the dehumidifier was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Electrolux breached the aforementioned warranties.

33.      Plaintiffs had and have performed all conditions precedent to recover based upon such breaches.

34. Plaintiffs' damages, as described above, occurred as a direct and proximate result of, *inter alia*, Electrolux's breach of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A.§2-315 and §2-314(c), and as a result of Electrolux's breach of its expressed warranties in violation of 13 Pa.C.S.A. §2-313, as well as the express and implied warranties set out in the warranties plaintiffs purchased at the time of buying the dehumidifier, and/or any time prior or subsequent thereto.

**WHEREFORE**, plaintiff respectfully requests judgment against Electrolux – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000, plus costs incident to this suit, delay damages and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT VI – STRICT LIABILITY – ELECTROLUX

35. Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

36. Electrolux is engaged, and at all times relevant hereto was engaged, in the business of designing, assembling, manufacturing, distributing, *inter alia*, dehumidifiers, and, specifically, the dehumidifier at issue in this case.

37. Electrolux designed, assembled, manufactured, and/or distributed the dehumidifier in a defective condition, unreasonably dangerous to plaintiffs and their property.

38. Electrolux knew or should have known that the dehumidifier would, and did, reach the plaintiffs without substantial change in the condition in which originally selected and sold.

39. The aforementioned defects consisted of:

    (a)    design defects;

    (b)    manufacturing defects;

    (c)    component defects;

    (d)    use-instruction and/or warnings defects; and/or

    (e)    a failure to warn of the design, manufacturing, and/or component defects, and/or properly provide warning and/or safe use instructions.

40. For these reasons, Electrolux is strictly liable to plaintiffs under Section 402A of the Restatement (2d) of Torts, the Restatement (3d) of Torts, and the applicable caselaw of the Commonwealth of Pennsylvania.

41. As a direct and proximate result of the aforementioned defects, plaintiffs sustained and incurred damage to their real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $150,000.

**WHEREFORE**, plaintiffs respectfully request judgment against Electrolux – jointly, severally and/or in the alternative with other defendant(s) herein – in an amount in excess of $150,000, plus interest, costs of suit, delay damages, and such other relief as the Court deems appropriate under the circumstances.

                                              **NELSON LEVINE de LUCA & HORST, LLC**

                                      BY:  DJDL 5957
                                                  DANIEL J de LUCA,
                                                  ATTORNEYS FOR PLAINTIFFS
                                                  ROSEANNE SCULLY AND CHARLES M.
                                                  CAVANAUGH
                                                  Identification No. 74727
                                                  518 Township Line Road, Suite 300
                                                  Blue Bell, PA  19422
                                                  (215) 358-5100; (215) 358-5171
                                                  ddeluca@nldhlaw.com

Dated: June 15, 2010